J. A. LESTER et al., Appellants,

v.

Lawrence E. PARKER et al.,
Appellees.

No. 14081.

United States Court of Appeals
Ninth Circuit.

Oct. 1, 1956.

As Amended Oct. 15, 1956.

Warren E. Burger, Asst. Atty. Gen., Donald B. MacGuineas, Paul A. Sweeney, Attys., Dept. of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., Brobeck, Phleger & Harrison, San Francisco, Cal., for appellants.

Gladstein, Andersen, Leonard & Sibbett, Richard Gladstein, Norman Leonard, San Francisco, Cal., for appellees.

Before HEALY, McALLISTER, and POPE, Circuit Judges.

PER CURIAM.

Appellants question our statement that the only difference between the plaintiffs and all the seamen who are currently being employed is that the plaintiffs have been screened under the void procedures. They say: "The vital difference between appellees and all seamen working is that the latter have affirmatively satisfied the commandant that they are not security risks, whereas appellees have not so satisfied the commandant." The record here proves that this position is not tenable.

Defendants' motion to enter judgment pursuant to the mandate was set for hearing on May 2, 1956. May 1, 1956, one day before the hearing, the new regulations were published. The decree was entered July 12, 1956. Prior to May 1, no valid regulations for "satisfying" the commandant existed. The old regulations and procedures were unconstitutional and null and void. No permissible process for screening seamen could antedate May 1. The trial judge knew that neither on May 2d, when the ink on the new regulations was hardly dry, nor on July 12, 1956, had 425,000 working seamen been processed.[1] We do not understand appellants to assert that by either of those dates all these men had affirmatively satisfied the commandant that they were not security risks under these new regulations. To become "satisfied" as to the character and habits of a seaman requires a process of ratiocination. Manifestly that did not take place with respect to these employed seamen. The trial court knew that the defendants had merely drawn the line between the approved and the disapproved groups on the basis of determinations previously made when the void regulations were in effect. As we said in the opinion,—the trial court was not required to recognize the validity of any such action.

As respects a man's right to seek employment, the only difference between denying that right permanently, and denying it for a period of time, is one of degree. A temporary wrongful denial of employment is an act of the same character and quality as a permanent denial. When this case went back to the trial court, which had original jurisdiction of the issues, it was confronted with the plaintiffs' claim that defendants had prevented their employment and still threatened such prevention. Its duty to enter an appropriate injunction was clear, for the proposal forthwith to rule these men off the sea without a hearing and solely upon the basis of the

[1] This figure is taken from the statistics furnished in the report of the Special Committee of the Association of the Bar of the City of New York on the Federal Loyalty-Security Program, Dodd, Mead & Co., New York, 1956. The figures there given, reportedly obtained from the Acting Commandant United States Coast Guard, are the figures for December 31, 1955. It is assumed that the number of working seamen in 1956 was not substantially different.

earlier void determinations, was a threatened abuse of power against which plaintiffs were entitled to an injunction even if the threatened exclusion was calculated to remain effective only for such number of months or years as the commandant might take to get around to a hearing.

Our disposition of this case has made it unnecessary to consider the constitutional question as to whether, in the year 1956, regulations may validly, en masse, and in advance, provide that none may work until they "satisfy" some commanding officer.

The petition for rehearing is denied.